IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ALBERTO TREJO, # 266435, | * |
| | * |
|     Plaintiff, | * |
| | * |
| vs. | *   CIVIL ACTION NO. 21-00390-TFM-B |
| | * |
| STATE OF ALABAMA, *et al.*, | * |
| | * |
|     Defendants. | * |

## REPORT AND RECOMMENDATION

This action is before the Court on Alabama prison inmate Alberto Trejo's "Emergency Notice Plaintiff Has Been Stabbed in Lock Up '24' Times and the Crip Gang Vows He Will Die" (Doc. 26). The Court construed Trejo's pleading as a motion for preliminary injunction[1] and referred it to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(b) and S.D. Ala. GenLR 72(a)(1). (Doc. 27). In his notice, Trejo alleges that he was stabbed 24 times in the back while in "lock-up" at Fountain Correctional Facility and asks this Court to intervene to prevent the Alabama Department of Corrections from "facilitat[ing] a Crip Gang hit" on his life. For the reasons stated herein, the undersigned recommends that Trejo's motion for preliminary injunction (Doc. 26) be **DENIED**.

---

[1] The Court denied Trejo's request for relief to the extent his pleading could be construed as a request for a temporary restraining order. (Doc. 27 at 2).

## I. BACKGROUND

Trejo originally filed this action in the Middle District of Alabama while he was incarcerated at Kilby Correctional Facility ("Kilby") in Montgomery County, Alabama. In his original complaint, filed in April 2020, Trejo alleged that a DEA agent and an officer from the Alabama Department of Corrections ("ADOC") Intelligence and Investigations ("I&I") Division failed to follow proper procedures when they attempted to question him at Kilby on March 11, 2020. Trejo asserted that the DEA agent and I&I officer's indiscreet questioning of him at the prison caused other inmates to believe he was a "snitch" and thus placed his life in danger at Kilby. (See Doc. 1).

The court in the Middle District of Alabama determined that Trejo's complaint was deficient and directed him to file an amended complaint on that court's form complaint for prisoner actions under 42 U.S.C. § 1983. (Doc. 8). Although Trejo was directed to file his amended complaint by June 22, 2020, he took no further action in this case until filing a motion in June 2021. (See Doc. 9). After being ordered twice more to file an amended complaint on the court's § 1983 prisoner complaint form (see Docs. 11, 14), Trejo, in August 2021, filed a document titled "Amendment to Claim and Relief Sought by Plaintiff". (Doc. 16). The document, which was not on the Middle District of Alabama's required complaint form, reflected that Trejo had been transferred to Fountain Correctional

2

Facility ("Fountain") in Escambia County, Alabama.[2] Moreover, Trejo did not address any of the claims raised in his original complaint, but instead only addressed "Additional Occurences" [sic] that had allegedly taken place *after* his transfer to Fountain.[3] (See id.).

The court in the Middle District of Alabama construed Trejo's "Amendment to Claim and Relief Sought by Plaintiff" as an amended complaint. (Doc. 17 at 1 & n.1). Because the amended complaint only addressed events that had allegedly occurred since Trejo's transfer to Fountain, the Middle District of Alabama transferred Trejo's action to this Court on September 9, 2021. (See Docs. 17, 19, 20).

---

[2] Kilby Correctional Facility, where Trejo was incarcerated when he initiated this action, is located in the Middle District of Alabama. Fountain Correctional Facility, where Trejo is currently incarcerated, is located in the Southern District of Alabama. See 28 U.S.C. § 81(b)(1) & (c)(2).

[3] Specifically, Trejo alleged in his "Amendment to Claim and Relief Sought by Plaintiff" that he had recently been robbed, punched, spat upon, and called a "snitch" by members of the "Crip Gang" at Fountain. (Doc. 16 at 1). Trejo stated that he was currently in "lock-up" because he had been robbed and was to be killed by the Crip Gang. (Id. at 2). However, he alleged that the correctional staff at Fountain had not placed him in lock-up for his own protection, but rather because they did not want a riot to break out if Trejo was murdered. (Id.). Trejo further alleged that the Crip Gang had sent several notes to him in lock-up informing him that "no matter what [ADOC] camp he go to his death will occur!" (Id.). Trejo requested immediate transfer to federal custody, $100,000 in U.S. currency, immediate investigation of "the A.D.O.C domestic terrorist state sponsored hit" on his life, and that an Assistant United States Attorney in the Middle District of Alabama be notified that Trejo's life was in grave danger. (Id. at 3).

3

In an order dated September 10, 2021, the undersigned noted that Trejo's amended complaint (Doc. 16) was not on the form required for § 1983 prisoner complaints by either the Middle District of Alabama or by this Court. (Doc. 22 at 2). Accordingly, the undersigned ordered Trejo to file a new complaint using this Court's required form for § 1983 prisoner actions by October 11, 2021. (Id.). Trejo was expressly advised that he was required to provide the name of each defendant who is alleged to have violated his rights and describe how each defendant violated his rights. (Id.).

On October 4, 2021, Trejo filed the instant motion for preliminary injunction.[4] (Doc. 26). In his motion, Trejo indicates that he is still in "lock-up" at Fountain as a result of his assault by Crip Gang members. (Id. at 1). Trejo alleges that while in lock-up, he was beaten and stabbed 24 times in the back. (Id. at 1, 3). Trejo asserts that ADOC facilitated the "lock-up hit" by "plant[ing] a Crip hitman in the cell to kill [him]." (Id. at 1-2). Trejo contends that the correctional staff at Fountain are "intertwined with" the Crip Gang and are assisting the gang in its efforts to kill him. (Id. at 3). He asks this Court to send

---

[4] Trejo mailed the motion to the Middle District of Alabama, which inadvertently forwarded it to the Northern District of Alabama, which then forwarded it to this Court. (See Doc. 26 at 5; Doc. 26-1).

4

a U.S. Marshal to investigate this matter and to order the Federal Bureau of Prisons to "house" Trejo.[5] (Id. at 2-3).

On October 8, 2021, Trejo filed a second amended complaint.[6] (Doc. 24). In his second amended complaint, Trejo alleges that "the Crip Gang issued a death warrant against Trejo" as the result of a DEA agent and an ADOC employee "parading him around with them to inmates to give the false impression Trejo was snitching on them." (Id. at 5). He further asserts that he was "jumped by Crip Gang" members at Fountain in September 2021, "which resulted in him being placed in lock-up." (Id.). Trejo further states that he begged the correctional staff at Fountain to place him in a cell alone, but an "inmate named Derrione Dominique Gates[,] a Crip Agent[,] was housed with Trejo in a lock-up cell." (Id.). Trejo alleges that Captain Knight asked inmate Gates: "You not going to do nothing to this crying wetback are you?" (Id. at 6). After inmate Gates responded: "You know what up! Fuck this Mexican

---

[5] In 2014, Trejo was indicted in the Middle District of Alabama on one count of conspiracy to possess with intent to distribute methamphetamine. Trejo was accused of organizing and leading the drug conspiracy while serving a 99-year sentence for murder in Alabama state prison. Trejo pled guilty to the federal charge without a plea agreement, and the district court sentenced him to serve thirty years in prison, to run consecutive to his 99-year state prison sentence. See United States v. Trejo, 624 F. App'x 709, 710, 712 (11th Cir. 2015) (per curiam).

[6] Inexplicably, Trejo's second amended complaint is on a *Northern* District of Alabama form. (See Doc. 24).

5

snitching bitch!", an officer laughed at Trejo. (Id.). Trejo states that he was asleep in lock-up at Fountain in October 2021 when "a Crip hitter[7] planted in his cell by ADOC staff, stabbed Trejo '29' times in the back!" (Id. at 5). Trejo claims that as he was being moved from his cell to a medical facility, "Lt. Smith stated 'damn this wetback is still alive. Shit he won't die. Next time he w[on't] survive!'" (Id. at 6). Trejo's second amended complaint seeks immediate transfer to federal custody, $1 million in compensatory damages, and $1 million in punitive damages. (Id. at 7).

## II. DISCUSSION

"[T]he purpose of a preliminary injunction is to preserve the relative positions of the parties until a trial on the merits can be held." Brown v. Sec'y, U.S. Dep't of Health & Hum. Servs., 4 F.4th 1220, 1225 (11th Cir. 2021) (quotation omitted). In order to obtain a preliminary injunction, "a party must establish four separate requirements—namely, that (1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." Swain v. Junior,

---

[7] By "Crip hitter", Trejo is presumably referring to inmate Gates. (See Doc. 24 at 5-6).

961 F.3d 1276, 1284–85 (11th Cir. 2020) (quotation omitted). "In this Circuit, a preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the burden of persuasion as to each of the four prerequisites." Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc) (per curiam) (quotations omitted).

Turning to the first prerequisite for issuance of preliminary injunctive relief, at this juncture, it is not clear whether Trejo has a substantial likelihood of succeeding on the merits of his underlying claims. Indeed, due to Trejo's failure to utilize the proper complaint form and to provide the name of each defendant who is alleged to have violated his rights and how each defendant violated his rights, it is not clear which claims Trejo seeks to raise and whom he seeks to name as defendants in this action. For instance, while Trejo asserts that ADOC planted the "Crip hitter" who stabbed him in his cell, he has not identified the defendants who allegedly planted the "Crip Hitter". In addition, Trejo provides no authority for his apparent position that he should be transferred into federal custody based on the potential risk of harm from other state prisoners. See Daniels v. Sikes, 2008 WL 4104150, at *1 (S.D. Ga. Sept. 4, 2008) ("Plaintiff does not cite, and the Court is not aware of, any viable legal or statutory justification for his position that a state prisoner should be removed from the custody of state officials and placed in the

7

custody of federal officials simply so that he can avoid exposure to secondhand smoke, receive medical treatment, or avoid alleged 'hostile' state prisons. Although Plaintiff requests that the Court transfer him from HSP to federal custody, inmates do not have a constitutional right to be housed at one facility or another.").

Furthermore, it does not appear that the second factor necessary for preliminary injunctive relief — a substantial threat that Trejo will suffer irreparable injury absent issuance of a preliminary injunction — currently exists. While Trejo's amended complaint asserts that officers at Fountain placed him in a "lock-up cell" with alleged "Crip Agent" Derrione Dominique Gates, AIS # 313490 (see Doc. 24 at 5-6), Trejo cannot show that this threat is ongoing, given that ADOC records reflect that inmate Gates is presently incarcerated at another facility.[8]  Further, Trejo has not alleged that he is presently being housed in a cell with any other inmates, let alone with one associated with the "Crip" gang. See Alverson v. Dunn, 2018 U.S. Dist. LEXIS 90092, at *4, 2018 WL 3207415, at *2 (M.D. Ala. May 29, 2018) (finding no substantial threat of irreparable injury where it was undisputed that plaintiff had been placed in segregation and remained there based on his allegations of sexual assault and harassment against another

---

[8] See http://www.doc.state.al.us/InmateHistory (last visited Nov. 10, 2021).

8

inmate), report and recommendation adopted, 2018 U.S. Dist. LEXIS 108091, 2018 WL 3186952 (M.D. Ala. June 29, 2018).

Trejo makes no argument as to the third and fourth factors and therefore does not carry his burden of showing that the threatened injury outweighs the harm an injunction would inflict on the non-movants or that an injunction would not be adverse to the public interest. The undersigned notes that "[c]ourts are generally hesitant to grant motions for injunctive relief that interfere with a prison's administrative decisions, including inmate housing assignments or assignment of inmates to a specific facility." Brown v. Strickland, 2019 U.S. Dist. LEXIS 20104, at *6-7, 2019 WL 984290, at *2 (M.D. Ala. Feb. 6, 2019), report and recommendation adopted, 2019 U.S. Dist. LEXIS 32311, 2019 WL 982390 (M.D. Ala. Feb. 28, 2019); see Freeman v. Fuller, 623 F. Supp. 1224, 1227 (S.D. Fla. 1985) (finding that the placement of inmates inside a prison "is a matter peculiarly within the province of prison authorities' administrative duties" and that federal courts "accord great deference to administrative decisions rendered by prison authorities and will not interfere except in extreme cases"); Bell v. Wolfish, 441 U.S. 520, 547 (1979) ("Prison administrators therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."); Alverson, 2018 U.S.

Dist. LEXIS 90092, at *4, 2018 WL 3207415, at *2 (finding, where plaintiff sought placement in administrative segregation to protect him from toxic second-hand smoke and sexual assaults and harassment by another inmate, that the balancing of potential harm to the parties "weighs more heavily in favor of the defendants as issuance of the requested preliminary injunctive relief would adversely impact the ability of correctional officials to determine the proper manner in which to provide security to inmates at Easterling").

Finally, the Court notes that Trejo appears to improperly direct his motion for preliminary injunction against ADOC and the Federal Bureau of Prisons. (See Doc. 26). The Bureau of Prisons is not a party to this action (see Doc. 24), and the Court lacks subject matter jurisdiction to issue an injunction against non-parties. See In re Infant Formula Antitrust Litig., MDL 878 v. Abbott Labs., 72 F.3d 842, 842-43 (11th Cir. 1995); E.A. Renfroe & Co., Inc. v. Moran, 338 F. App'x 836, 838 (11th Cir. 2009) (per curiam) ("[I]t is axiomatic that courts may only enjoin parties before the court."). Further, as the court in the Middle District of Alabama previously advised Trejo in this action, "the Alabama Department of Corrections [is an] extension[ ] of the State, and, as such, [is] absolutely immune from suit." (See Doc. 8 at 1). The Eleventh Amendment bars suits against a state or one of its agencies or departments by its citizens, unless the state has

waived its Eleventh Amendment immunity or Congress has abrogated it. Carr v. City of Florence, Ala., 916 F.2d 1521, 1524 (11th Cir. 1990). The State of Alabama has not waived its Eleventh Amendment immunity, nor has Congress abrogated Eleventh Amendment immunity in actions brought pursuant to § 1983. Id. at 1525. While the Ex parte Young doctrine carves out a narrow exception to Eleventh Amendment immunity for suits brought against state officials in their official capacities for prospective injunctive relief to end continuing violations of federal law, see Seminole Tribe of Florida v. State of Florida, 11 F.3d 1016, 1028-29 (11th Cir. 1994), the exception "has no application in suits against the States and their agencies, which are barred regardless of the relief sought." Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 146 (1993).

### III. **CONCLUSION**

As Trejo has failed to meet his burden of demonstrating the existence of each prerequisite necessary to warrant issuance of preliminary injunctive relief, it is recommended that his motion for preliminary injunction (Doc. 26) be **DENIED.**

### **NOTICE OF RIGHT TO FILE OBJECTIONS**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific

written objections with the Clerk of this Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1.

In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing done by the Magistrate Judge is not specific.

**DONE** this **12th** day of **November, 2021.**

                                                          **/s/ SONJA F. BIVINS**
                                    **UNITED STATES MAGISTRATE JUDGE**